

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable John A. Hamilton
District Attorney
Matador, Texas

Dear Sir:

Opinion No. O-1927
Re: Is described instrument,
filed for record in Motley
County, Texas, acknowledging
the bonded indebtedness of
Quanah, Acme & Pacific Rail-
way Company, subject to the
excise stamp tax levied by
Article 7047e, V.A.C.S.

By your letter of January 27, 1940, you seek our opinion
upon the application of Article 7047e, Vernon's Annotated Civil
Statutes, to a certain instrument filed for record in Motley County
by the Quanah, Acme & Pacific Railway Company, purporting to ac-
knowledge a bonded indebtedness of approximately $3,000,000.00
and agreeing to pay same on demand. This instrument, having been
inadvertently offered for registration and recorded without the
affixing thereto of excise tax stamps in the amount and denomina-
tion required by Article 7047e, as amended, Vernon's Annotated
Civil Statutes, you submit an able and helpful brief in connec-
tion with the following three questions, which we state, sub-
stantially, as follows:

1. Does the foregoing Article, considered in all its
terms, impose an excise stamp tax upon renewal or exten-
sion agreements relating to instruments evidencing secured
indebtednesses not theretofore stamped under the provisions
of the Act?

2. If such renewal or extension agreements are taxable,
then is the particular instrument involved here, such re-
newal or extension agreement as is contemplated by the Act?

3. Is said Article 7047e, V.A.C.S., imposing a tax,
in effect, upon the original bond issue, because of the
filing and recording of the renewal and extension agreement
in question, valid and constitutional?

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. John A. Hamilton, page 2

In connection with the foregoing questions, you attach a letter to you from Hon. R. A. Seay, County Clerk, Motley County, Texas, stating certain facts in connection with this transaction. However, inasmuch as this opinion will turn squarely upon a construction of the above mentioned instrument, considered from its four corners, and the material facts appear in said instrument, we quote same in haec verba, omitting formal parts:

"WHEREAS, On October 1, 1909, Quanah, Acme & Pacific Railway Company, a corporation organized and existing under the laws of the State of Texas, executed and delivered to Commonwealth Trust Company, a corporation organized and existing under the laws of the State of Missouri, as Trustee, (St. Louis Union Trust Company, a corporation of the State of Missouri, Successor Trustee) a certain mortgage and deed of trust covering and including the line of railroad of the mortgagor extending from Quanah, Hardeman County, Texas, in a westerly and southwesterly direction through the Counties of Hardeman and Cottle in the State of Texas to the Southwest line of said Cottle County, and from Acme, Hardeman County, Texas, in a northwesterly direction to the Red River, together with certain other property in said instrument described, reference here being made to said mortgage and deed of trust and to the record thereof for a full and complete description of the property covered thereby, as well as the terms, conditions and provisions of said mortgage and deed of trust; and

"WHEREAS, the said mortgage was executed to secure an authorized issue of bonds in the sum of $30,000 per mile of completed road, or so much thereof as the Railroad Commission of the State of Texas may from time to time authorize and allow, to be known as its First Mortgage Six Per Cent Gold Coupon Bonds, to bear date the 1st day of October, 1909, and to be payable the 1st day of October, 1959, with interest at the rate of 6% per annum, and pursuant to the terms of said mortgage and deed of trust bonds aggregating the principal sum of $2,915,000.00 have been duly issued and are now outstanding and are held by Central Hanover Bank and Trust Company, a corporation organized and existing under the laws of the State of New York, as Trustee under the Prior Lien Mortgage of St. Louis-San Francisco Railway Company, dated July 1, 1916.

Hon. John A. Hamilton, page 3

"NOW, THEREFORE, for valuable consideration to it paid, Quanah, Acme & Pacific Railway Company hereby declares that said bonds, aggregating the principal sum of $2,915,000.00, constitute a valid, unpaid and subsisting indebtedness of the said Railway Company and the principal of said indebtedness, together with interest thereon accrued and to accrue, shall be payable on the demand of said Central Hanover Bank and Trust Company, as Trustee as aforesaid, or its successors in trust, and/or its or their assignees, and the debt and lien evidenced or created by said bonds and said mortgage and deed of trust are hereby renewed and extended and continued in full force and effect according to the tenor, effect and reading of said bonds and said mortgage and deed of trust, which mortgage and deed of trust shall stand as security for the payment of said debt on the demand of said Central Hanover Bank and Trust Company, as Trustee as aforesaid, or its successors in trust, and/or its or their assignees, according to the terms of said bonds and said mortgage and deed of trust and the provisions of this instrument."

These First Mortgage Six Per Cent Gold Coupon Bonds were originally issued October 1, 1909, by the Quanah, Acme & Pacific Railway Company in the principal sum of $2,915,000.00, and the mortgage or deed of trust securing this bond issue was, of course, not stamped, as a condition prerequisite to registration, because the statute levying the excise stamp tax upon such instrument had not been enacted. In this connection, subdivision (a) of Article 7047e, as amended, Vernon's Annotated Civil Statutes, contains the following proviso:

". . . and, providing further that, except as to renewals or extensions of accrued interest, the provisions of this section shall not apply to instruments given in renewal or extensions of instruments theretofore stamped under the provisions of this Act or the one amended hereby, and shall not apply to instruments given in the refunding of existing bonds or obligations where the preceding instrument of security was stamped in accordance with this Act or the one amended hereby; . . ."

This Department had occasion recently to construe the above proviso in Opinion No. O-1961 to Honorable Dan W. Jackson, Civil District Attorney, Houston, Texas, and held that extension

Hon. John A. Hamilton, page 4

agreements, in the form ordinarily and commonly executed, extending the maturity date of a secured indebtedness not "theretofore stamped under the provisions of this Act" would not be exempted from the incidence of this tax. This opinion presents a complete answer to your first question, and we, therefore, enclose a copy of same for your examination.

Is the instrument described in your letter and attached correspondence and reproduced hereinabove, an instrument "given in renewal or extension" of a bonded or secured indebtedness, "not theretofore stamped under the provisions of this Act," so as to be subject to the excise or privilege tax levied by subdivision (a) of Article 7047e, Vernon's Annotated Civil Statutes, considered in connection with the above quoted proviso? This is substantially your second question, and the one which we find this opinion will solely turn upon.

It conclusively appears from the "whereases" of this instrument that the original bonded indebtedness, secured by a mortgage or deed of trust upon described properties of the Quanah, Acme & Pacific Railway Company, is such secured obligation as would now come within the scope and purview of subdivision (a) of Article 7047e, Vernon's Annotated Civil Statutes, levying an excise or privilege tax in a graduated amount "on all notes and obligations secured by chattel mortgage, deed of trust, mechanic's lien contract, vendor's lien, conditional sales contract and all instruments of a similar nature which are filed or recorded in the office of the County Clerk under the Registration Laws of this State." It further appears that such indebtedness matured October 1, 1939, and the instrument in question here was executed October 2, 1939. The operative portion of the instrument recites that, for a valuable consideration, the railway company "hereby declares that said bonds, aggregating the principal sum of $2,915,000.00, constitute a valid, unpaid and subsisting indebtedness of the said railway company and the principal of said indebtedness, together with interest thereon accrued and to accrue, shall be payable on the demand of said Central Hanover Bank and Trust Company" etc. The instrument further provides that "the debt and lien evidenced or created by said bonds and said mortgage and deed of trust are hereby renewed and extended and continued in full force and effect according to the tenor, effect and reading of said bonds" etc.

The language last quoted, in form only and without regard to legal principles, tends to characterize the instrument as an extension or renewal agreement, while the words quoted prior

Hon. John A. Hamilton, page 5

thereto indicate only an intent on the part of the mortgagor
railway company to acknowledge the justness and validity of
the bonded indebtedness and lien securing same, agreeing to
pay same on demand. But the mere employment, in reference to
the bonds, of the words "are hereby renewed and extended,"
or the designation of this instrument as an extension agree-
ment by the parties thereto or interested officials here, will
not make it such, either in substance or form. It is not what
the parties call an instrument but what it actually is in the
eyes of the law which will control, and we must therefore resort
to the authorities upon this question.

The rule may be generally stated that an extension or
renewal of notes and the liens securing same, rests in contract
and means that which takes place when the debtor and creditor
made an agreement, upon a valuable consideration, for the
maturity of the debt on a day subsequent to that provided in the
original contract. National Bank of Commerce vs. Kenney, 98
Tex. 293, 83 S. W. 368; Elk Horn Bank & Trust Co., et al vs.
Spraggins, 30 S. W. (2d) 858; Campbell River Timber Co. Ltd.,
vs. Vierhus, 86 Fed. (2d) 673, 108 A.L.R. 763; Sheldon vs. Miss.
Cotton Seed Products Co., 81 Fed. (2d) 169; O'Banion vs. Willis,
et al, 129 So. 440; Slottow vs. Hull Inv. Co., 129 So. 577;
Sammons vs. Nabers, et al, 197 S. W. 284.

In the case of National Bank of Commerce vs. Kenney,
supra, our Supreme Court, in passing upon the negotiability of
a promissory note containing a provision with reference to ex-
tension agreements, said:

"It seems to us the extension meant is that which
takes place when the debtor and creditor make an agree-
ment upon a valuable consideration for the payment of
the debt on some day subsequent to that previously
stipulated."

The cases of Campbell River Timber Co. vs. Vierhus and
Sheldon vs. Miss. Cotton Seed Products Co., both supra, involved
a construction of the word "renewal" appearing in an Act of
Congress levying an excise stamp tax upon corporate securities
and providing that every renewal thereof shall be taxed as a new
issue. The instrument before the court in each of these cases
was in the nature of a supplemental indenture or mortgage extend-
ing the time of the maturity of the original bond issue, but not
being a renewal thereof, in the sense that a new indenture or deed
of trust was executed in lieu of the original. It was held that
the instruments involved were "renewals" because they contained
the essential conditions of an extension of the maturity date of
the original instrument.

Hon. John A. Hamilton, page 6

It will thus be seen from the adjudicated cases in this and other jurisdictions that extension of payment of an obligation rests in agreement of parties, by which, for a consideration, the obligee precludes himself from taking action against obligor during the period of extension; the time of payment is postponed and a new and different maturity date is fixed than the original instrument bears. The context of the proviso under consideration here does not require any other or different construction to be placed upon the words "renewal or extension of instruments" than that accorded it, not only by the above decisions but by the ordinary acceptation of the terms. The instrument under examination here is not either a renewal agreement, an extension agreement, or a renewal and extension agreement, in the sense which the Legislature must have intended, because same is not a renewal of the original indenture or deed of trust, nor is the maturity date of the bonds secured thereby extended from October 1, 1939, to any future date.

While the purposes which prompted the execution of this instrument are somewhat obscure, there can be no doubt that its only effect is to acknowledge the justness of the original bonded indebtedness and to confirm the validity of the liens securing same, so as to toll the Statute of Limitations for the period of one day, under Article 5539, Vernon's Annotated Civil Statutes. It is apparently an attempt to comply with the terms of Article 5522, Vernon's Annotated Civil Statutes, being executed and acknowledged with the statutory formalities, but that statute clearly contemplates the registration of instruments extending the date of maturity of the original indebtedness, and, in fact, is the type of renewal or extension instrument contemplated by the proviso here considered. Quite true the instrument here extends the period of limitation during which suit may be brought by one day, and to that extent and for that purpose, may be said, by implication of law, to extend the deed of trust or indenture securing same. Cherry vs. Corban, et al, 119 S. W. (2d) 111. But this merely goes to the remedy and is a quite a different thing from an instrument which reflects a contract between the parties to alter their substantive rights, by moving forward the date when the right of the obligee to sue first arises.

The foregoing answer to your second question renders unnecessary any answer to your third question.

You are accordingly advised that the instrument described and discussed in this opinion is not such a renewal or extension of the original indebtedness and lien referred to therein, as to

591

Hon. John A. Hamilton, page 7

be subject to the excise stamp tax levied by subdivision (a),
Article 7047e, Vernon's Annotated Civil Statutes, considered in
connection with the proviso therein, and the enclosed opinion
of this Department construing same.

Trusting the foregoing fully answers your inquiry, we
are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Pat M. Neff, Jr
Assistant

PMN:N

APPROVED MAR 18, 1940

ATTORNEY GENERAL OF TEXAS


APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN